FILED
SUPERIOR COURT
OF GUAM

2023 JUN 29 AM 10: 36

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

CARLENE BELLO BUKIKOSA and
BELLA BELLO MARTINEZ,

Plaintiffs,

vs.

BENNY BENAVENTE BELLO,
JOSEPHINE BELLO-DUENAS, GEORGE
BENAVENTE BELLO, BELLO
ENTERPRISES, BELLO FAMILY L.L.C.,
and DOES I through V,

Respondents/Defendants.

CIVIL CASE NO. CV1172-19

**DECISION AND ORDER**

**RE: MOTION FOR PARTIAL
SUMMARY JUDGMENT**

This matter is before the Honorable Maria G. Fitzpatrick, Judge *Pro Tempore* of the Superior Court of Guam, on the Motion for Partial Summary Judgment (Jan. 27, 2023) filed on behalf of Defendants George Benavente Bello ("George") and Benny Benavente Bello ("Benny"). The court held a hearing on this Motion on March 27, 2023. There, Attorney Phillip Torres appeared on behalf of Defendants George and Benny; Attorney Daniel Berman also appeared on behalf of Benny; Attorney Jon A. Visosky appeared on behalf of Defendant Josephine Bello-Duenas ("Josephine"); Attorney Jeffrey A. Cook appeared on behalf of Defendants Bello Enterprises and Bello Family LLC (collectively, "Corporate Defendants"); and Attorney Carlos L. Taitano appeared on behalf of Plaintiffs Carline Bello Bukikosa ("Carline") and Bella Bello Martinez ("Bella"). At the conclusion of the hearing, the court took the matter under advisement and now issues the following Decision and Order.

## BACKGROUND

The Motion before the court is pursuant to Guam Rule of Civil Procedure (GRCP) 56. In October 2019, when the Verified Complaint in this case was filed, Guam's summary judgment procedure was somewhat different than it is today. But in July 2022—many months before the instant Motion or Opposition were filed—the Supreme Court of Guam issued Promulgation Order PRM 06-006-18 (Jul. 18, 2022). This Promulgation Order clarified local summary judgment procedure in two significant ways. First, the Promulgation Order amended the GRCP 56 to correspond more closely to its federal equivalent. After this update, GRCP 56 now provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) <u>citing to particular parts of materials in the record,</u> including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) <u>showing that the materials cited</u> do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Guam R. Civ. P. 56(c)(1) (emphasis added). Second, Promulgation Order PRM 06-006-18 created a new Civil Local Rule of the Superior Court of Guam ("CVR"), codified at CVR 56.1, which provides:

> (a) Motion. Any motion for summary judgment must include:
>> (1) a statement of the issues to be decided by the court; and
>> (2) <u>a "Statement of Undisputed Material Facts" with references to supporting material in the record.</u>
> (b) Response. Any response to a motion for summary judgment must include:
>> (1) a statement of the issues to be decided by the court if the nonmovant is dissatisfied with the movant's statement of the issues; and
>> (2) <u>a response to the "Statement of Undisputed Material Facts,"</u> which may include a statement of material facts that demonstrate the existence of a genuine factual dispute to be tried, with references to supporting material in the record.

CVR 56.1 (2022) (emphasis added). According to the Promulgation Order, amended Rule GRCP 56 and new Rule CVR 56.1 "shall apply . . . *to all actions, cases and proceedings to the effective date hereof and still pending,*" PRM 06-006-18 at 2 (Jul. 18, 2022), with the effective date being August 1, 2022—again, many months before the Motion or Opposition were filed. This case was

still pending on August 1, 2022, meaning amended Rule GRCP 56 and new Rule CVR 56.1 should govern this Motion.

Although Defendants' Motion and Plaintiffs' Opposition were each filed after the CVR 56.1 became effective, neither party provided a statement of undisputed material facts, and direct citations to the record other than to the parties' own declarations are scarce. In short, neither party fully complied with GRCP 56 or CVR 56.1 in terms of providing the court with *undisputed* material facts. The failure to comply with a local rule is, potentially, grounds for sanction on the parties. *See Rong Chang Co. v. M2P, Inc.*, 2012 Guam 1 ¶ 24 ("the various trial court judges retain considerable discretionary powers necessary to manage their respective dockets," including the power to enforce local rules). Here, however, the court declines to impose any sanction on the parties, preferring instead to reach the merits of the Motion. The court has independently reviewed the record and has determined that many key facts are effectively undisputed. The court finds the following facts material and undisputed for purposes of this motion:

Background Facts

1. The Plaintiffs (Carline and Bella) and the Individual Defendants (George, Josephine, and Benny) are siblings. V. Compl. at 3 (October 3, 2019).

2. The five individuals named above have been neighbors, living in adjacent houses that share a common road, for approximately thirty years. Decl. Benny Benavente Bello at 1 (Oct. 18, 2019).

3. The Plaintiffs and Individual Defendants are the sole and equal stockholders of the Corporate Defendants, *i.e.,* Bello Enterprises and Bello Family LLC. Decl. Plaintiffs at 5, 9-10 (Feb. 23, 2023).

4. The court takes judicial notice that in addition to the instant case, there are currently two other cases pending before the Superior Court involving these same parties: Civil Case No. CV0937-16 and Civil Case No. CV0408-17.

The Altercation on April 26, 2019

5. On April 26, 2019, the Plaintiffs came to the office of Bello Family LLC and Bello Enterprises to review the books and records of the Corporate Defendants. Decl. Plaintiffs at 5 (Feb. 23, 2023).

6. One of the purposes of the Plaintiffs' inspection on April 26, 2019, was to find out what happened at an alleged annual meeting of the stockholders of Bello Enterprises on October 15, 2018. *Id.* at 6.

    a. The court has received a letter, purportedly by Benny to Carline, suggesting a meeting was indeed scheduled for that date. Decl. Plaintiffs, Ex. A (Feb. 23, 2023). However, Defendants deny such a meeting took place. Decl. Benny Benavente Bello at 4 (Mar. 20, 2023).

    b. There are no other records before the court establishing whether this meeting did occur.

7. On April 26, 2019, while the Plaintiffs were conducting their record inspection, Defendants Benny and Josephine entered the premises, in order to serve a Notice of Meeting regarding the Bello Family Trust, an entity not involved in this lawsuit. Decl. Benny Benavente Bello at 3 (Mar. 20, 2023).V. Comp.at 3 ¶18 (October 3,2019)

8. At that time, an altercation broke out between the Plaintiffs, Benny, and Josephine (hereafter, "the altercation").

    a. George was not present during the altercation.

9. Video of the altercation was recorded by a security camera caught on tape from a security camera on the premises without sound. Decl. Plaintiffs at 13 (Feb. 23, 2023).

    a. The original security camera video no longer exists and cannot be presented at trial. Decl. Benny Benavente Bello at 1-2 (Mar. 20, 2023).

10. A cellphone recording by Eva Chai Bello of the original security camera footage without sound does exist, and the court has already held this recording to be admissible evidence. Decl. Eva Chai Bello at 1-2 (Mar. 20, 2023); Dec. & Order (Apr. 14, 2023).

11. The cellphone recording of the altercation reveals the following:

    a. During the altercation, Benny did not make physical contact with either Plaintiff.

    b. During the altercation, Josephine may have made physical contact with Plaintiff Carline.

12. Carline and Bella claim that Benny and Josephine spoke to them harshly which is denied by Benny and Josephine.

   a. Although a dispute remains as to precisely what Benny said to the Plaintiffs during the altercation, Plaintiffs' counsel admitted during oral arguments on March 27, 2023, that Benny did not directly threaten to kill the Plaintiffs.

   b. Instead, per the representation of Plaintiffs' counsel, Benny allegedly stated that the Plaintiffs would have to "pay," which the Plaintiffs interpreted as an implied threat that Benny would pay someone to kill the Plaintiffs.

13. The cell-phone recording shows that after the altercation concluded, Bella took a photograph of Carline's back.

   a. The court has received a photograph submitted by the Plaintiffs, which purports to be the photograph Bella took of Carline's back on April 26, 2019. This photograph shows a scratch on Carline's back. Decl. Plaintiffs, Ex. F (Feb. 23, 2023)

   b. The scratch on Carline's back is visible, but only very slightly. The photograph shows no bruising, blood scabbing or swelling. There is no further evidence before the court that any serious physical injury occurred.

14. There is no evidence in the cell-phone recording showing any physical injury to Bella during the altercation.

15. The cell phone recording shows Bella and Carline continuing to make copies of documents during the altercation and after Benny and Josephine left.

## Applicability of *Respondeat Superior* Theory

16. It is contended by the Plaintiffs that the Corporate Defendants are vicariously liable, through the doctrine of *respondeat superior*, for injuries suffered by the Plaintiffs at the hands of Benny and Josephine. However:

   a. There is no evidence before the court showing George (acting on behalf of the Corporate Defendants) actually authorized or ratified any of the alleged acts of Benny and/or Josephine as the corporations' own action.

   b. There is no evidence before the court showing George (acting on behalf of the Corporate Defendants) had the unilateral power to authorize or ratify

any of the alleged acts of Benny and/or Josephine as the corporations' own action.

    c.  There is no evidence before the court showing that, either before or after the altercation on April 26, 2019, the Corporate Defendants (through their directors, or otherwise) voted to ratify, or otherwise took any particular action to ratify, the actions of Benny and/or Josephine as the corporations' own action.

17. There is no evidence before the court supporting Plaintiffs' theory that Benny was acting on behalf of the Corporate Defendants when serving the notice of meeting of the Bello Family Trust.

18. There is no evidence before the court supporting Plaintiffs' theory that Josephine was acting on behalf of the Corporate Defendants when accompanying Benny to serve the notice of meeting of the Bello Family Trust.

19. There is no evidence before the court that the argument was about anything to do with the Corporate Defendants.

## Aftermath of Incident: Injury to Plaintiffs

20. Although Carline claims she suffered extreme pain as a result of the scratch to her back, there is no evidence before the court that she went to a hospital or to a doctor to have the injury treated.

    a.  There is no evidence that Carline sought or received treatment for trauma, mental distress or any similar mental health issues subsequent to the incident.

    b.  No medical records have been submitted to corroborate Carline's claim that she suffered either serious bodily injury or mental distress.

    c.  There is no evidence that Bella sought or received treatment for trauma, mental distress or any similar mental health issues subsequent to the incident.

    d.  No medical records have been submitted to corroborate Bella's claim that she suffered either serious bodily injury or mental distress.

Aftermath of Incident: Copying Records

21. There is no evidence that at any time between April 26, 2019, and the filing of this lawsuit, Carlene or Bella contacted the Corporate Defendants to discuss resuming their inspection at a later date.

22. There is no evidence in the record that at any time between April 26, 2019, and the filing of this lawsuit, Carlene or Bella contacted George individually to inform him of the altercation or to discuss resuming their inspection at a later date.

Aftermath of Incident: Corporate Actions

23. Although Plaintiffs suggest George should have removed Benny and/or Josephine from their positions in the Corporate Defendants based on their actions on April 26, 2019, there is no evidence before the court showing that George had the unilateral authority to take such action.

24. There is no evidence in the record supportive of Plaintiffs' claim that George engaged in a conspiracy with Benny and Josephine to prevent Carline and Bella from inspecting the records of the Corporate Defendants.

From these facts, the court proceeds to analyze the motion.

## DISCUSSION

### 1. Summary Judgment Standard

Under Guam Rule of Civil Procedure (GRCP) 56(a), the court may grant summary judgment, or partial summary judgment, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Guam R. Civ. P. 56(a).

A dispute is "genuine" when "there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *Hemlani v. Hemlani*, 2015 Guam 16 ¶ 12 (quoting *Gayle v. Hemlani*, 2000 Guam 25 ¶ 20). To analyze whether the evidence advanced is sufficient, the court "must view the evidence and draw inferences in the light most favorable to the non-movant." *Id.* ¶ 13. However, even under this deferential standard, the non-movant must still produce "some significant probative evidence" beyond the mere allegations in the pleadings. *Id.* (quoting *Iizuka Corp. v. Kawasho Int'l, Inc.*, 1997 Guam 10 ¶ 7). The non-movant must produce

at least some significant probative evidence tending to support the complaint. *Fajardo et al v. Liberty House*, 2000 Guam 4 ¶ 6. The court must view the evidence and draw inferences in light most favorable to the non-movant. *Id.*

A fact is "material" if it is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *Hemlani*, 2015 Guam 16 ¶ 13. Because the court is concerned here only with "material" facts, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *Id.*

2. **Summary Judgment is Appropriate on All *Respondeat Superior* Claims and claims for Punitive Damages against the corporate defendants.**

Defendants ask the court to grant summary judgment in favor of the Corporate Defendants (Bello Enterprises and Bello Family LLC) on Counts 10-21 of the Verified Complaint. *See* Mot. Summ. Judgment at 2 (Jan. 27, 2023). Each of these counts asserts that the Corporate Defendants are responsible, under the doctrine of *respondeat superior*, for the actions of Benny and/or Josephine towards Carline and/or Bella during the altercation.

Under 18 GCA § 20310, "A principal is responsible for no other wrongs committed by his agent . . . unless he has authorized or ratified them, even though they are committed while the agent is engaged in his services."

Thus, "if the agent commits an intentional tort, then the doctrine of *respondeat superior* will not hold the principal vicariously liable to the third party unless the principal had authorized or ratified the conduct." *Fajardo et al v. Liberty House*, 2000 Guam 4 ¶ 10. Here, Benny and Josephine stand accused of Assault, Battery, and Infliction of Emotional Distress, all of which are intentional torts. It is undisputed that Benny and Josephine are stockholders and/or directors of the Corporate Defendants, which could establish the individual defendants as agents of the Corporate Defendants. However, it is undisputed that Benny and Josephine were present in order to serve Bella and Carline a document involving the Bello Family Trust not on a mission for the Corporate Defendants. V Comp. at 3¶ 18. Benny and Josephine cannot be said to be acting within the scope of their authority of the Corporate Defendants by committing an assault. Even assuming that such a principal-agent relationship exists here, 18 GCA § 20310 shields the principal from liability for the agent's actions absent evidence that the principal "authorized" or "ratified" the agent's actions. The question for summary judgment, then, is

whether there is any evidence showing Corporate Defendants authorized or ratified Benny and/or Josephine's actions.

At the outset, the court rejects Plaintiffs' argument that the issue of *respondeat superior* has already been decided in a prior Decision and Order, thereby establishing a controlling "law of the case." *See* Opposition at 9-10 (Feb. 23, 2023). The prior Decision and Order denied a motion by the Defendants to dismiss these same causes of action under GRCP 12(b)(6); the court held that the Verified Complaint was well-pleaded. Dec. & Order at 7 (Feb. 13, 2020).[1] But it is well-established that the denial of a motion to dismiss does not establish the "law of the case" guiding a summary judgment motion. *See Friedman v. Connecticut General Life Ins. Co.*, 30 A.D.3d 349, 350 (N.Y. Sup. Ct. 2006) ("The doctrine of law of the case is inapplicable where . . . summary judgment motion follows a motion to dismiss"); *Kellogg v. Middlesex Mutual Assurance Co.*, 272 A.3d 677, 691 (Conn. Ct. App. 2022) (similar); *Huntley v. Young*, 462 S.E.2d 860, 861 (S.C. 1995) ("The denial of a Rule 12(b)(6) motion does not establish the law of the case nor does it preclude a party from raising the issue at a later point or points in the case."). This is because "the scope of review on the two motions differs; the motion to dismiss examines the sufficiency of the pleadings, whereas summary judgment examines the sufficiency of the evidence underlying the pleadings." *Friedman*, 30 A.D.3d at 350. Thus, while the prior Decision and Order found the *pleadings* sufficient to defeat a motion to dismiss, it did not find the *evidence underlying the pleadings* sufficient to defeat summary judgment. Accordingly, there is no "law of the case" to govern the issue here.[2]

The first question is whether there is evidence that the Corporate Defendants "authorized" the allegedly tortious conduct of Benny and Josephine. The court finds none. There is no evidence that the Corporate Defendants were aware that Benny and Josephine planned to undertake tortious actions towards the Plaintiffs, nor evidence that the Corporate Defendants directed or expressly permitted Benny and Josephine to perform such actions. The court therefore finds no evidence

---

[1] This motion was presented for, and resolved by, the Honorable Michael J. Bordallo, who no longer presides over this case.

[2] Additionally, even if the prior Decision and Order did establish the "law of the case," the court would not be precluded by from reconsidering that decision. The law of the case doctrine does not bar a court from reconsidering its own orders before judgment is entered. *See, e.g., City of L.A. v. Santa Monica Baykeeper*, 254 F.3d 882, 888–89 (9th Cir. 2001); *see also* Guam R. Civ. P. 54(b) (A decision by the court that adjudicates "fewer than all of the claims" of the parties is "subject to revision at any time before the entry of judgment").

supporting the Plaintiffs' claim that the Corporate Defendants authorized the alleged tortious conduct.

The Declaration of Benny Bello January of January 27, 2023, states that, after their mother's death, family issues arose between the five siblings who are also the sole stockholders of the corporate defendants. These issues were about the medical care during her last months. These disputes eroded the fabric of the family to the point that the siblings as a group cannot get along and do not interact unless absolutely necessary. *Id.* at p. 2. On April 26, he arrived with Josephine to serve a document regarding the Bello Family Trust. The argument with Bella and Carline was unrelated to the inspection and copying of documents. Bella and Carline did not dispute these claims by Benny. The court concludes that the arguments are not related to the Corporate Defendants. Benny and Josephine were not acting on behalf of the corporation. Not every family argument between the siblings results in liability of the Corporate defendants just because the siblings are stockholders of a closely held Corporation.

The remaining question is whether the Corporate Defendants "ratified" the alleged conduct. To examine this question, the court looks to California case law.[3] California common law defines "ratification" as "the voluntary election by a party to adopt, as its own, an act purportedly done on its behalf by another, the effect of which is to treat the act as originally authorized by the ratifier." *Ratcliff v. The Roman Catholic Archbishop of Los Angeles*, 79 Cal. App. 5th 982, 1002-03 (Ct. App. 2002). A ratification may occur in two ways: the agent's act "may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred[.]". *Dickinson v. Cosby*, 37 Cal. App. 5th 1138, 1158 (Ct. App. 2019). A ratification by implication may occur when the principal's actions are "inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it." *Id.* The court finds neither standard met here.

First, nothing in the record shows that the actions of Josephine and/or Benny were *expressly* adopted after the fact by the Corporate Defendants. The record contains no evidence of any action by the Corporate Defendants with respect to Benny and/or Josephine's actions, whether publicly

---

[3] Title 18 GCA § 20310 derives from, and substantively mirrors, California Civil Code § 2339. *See* 18 GCA § 20310, SOURCE. Therefore, California law interpreting Section 2339 is persuasive. *Cf. Cruz v. Cruz*, 2005 Guam 3 ¶ 9 (where a section of the Guam Code Annotated is based on a California statute, California cases interpreting the similar California statute are persuasive).

or privately. Likewise, the record contains no evidence that the corporations called any sort of shareholder meeting in order to deliberate on the alleged actions. And as discussed in more detail below, the record offers no evidence that George, a director of the Corporate Defendants and a necessary party to any such vote, was even aware of the incident on April 26, 2019, until this lawsuit was filed. These facts persuade the court that the Corporate Defendants did not make any sort of "voluntary election . . . to adopt, as its own," any of the alleged actions of Benny and/or Josephine; therefore, there was no *express* adoption of these actions. Moreover, there is no evidence—nor any logical inference from what evidence exists—suggesting the actions of Benny and/or Josephine were "purportedly done on [the Corporate Defendants'] behalf." The court finds no reason to believe Benny and Josephine's actions, whatever they were, were undertaken on behalf of the Corporate Defendants; it is unclear to the court how these actions could have benefitted the corporations. This counsels against a finding of express ratification. *Cf. Bank of Oregon v. Hiway Products, Inc.*, 598 P.2d 318, 321 (Ore. Ct. App. 1979) (corporation did not "ratify" act of principle where that act did not benefit the corporation).

There is also nothing in the record persuasive to the court that the Corporate Defendants *impliedly* ratified Benny and Josephine's actions. The Plaintiffs' argument on this point appears to be that a ratification by the Corporate Defendants can be inferred based on George's personal failure to "simply . . . [and] promptly call[] and notice[] meetings of stockholders or directors, or members or managers, of [the Corporate Defendants], to vote, with Carline and Bella, on removing Benny and Josephine as directors, managers, or officers of these companies." Opp. Mot. Summ. Judgment at 12 (Feb. 20, 2023). In other words, Plaintiffs appear to suggest that because George did not call a meeting to expel Benny and Josephine from their managerial roles, this amounts to a ratification of their actions. In support of this argument, the Plaintiffs point to a California Court of Appeals case, *C.R. v. Tenet Healthcare Corp.*, 169 Cal. App. 4th 1094 (Cal. Ct. App. 2009). There, the California Court of Appeals recognized that a ratification can occur when an employer fails to investigate or respond to charges that an employee committed an intentional tort. 169 Cal. App. 4th at 1110 (Ct. App. 2009). Thus, in some circumstances, "ratification may occur when an employer learns of misconduct and fails to discharge an agent or employee." *Id.* at 1111.

However, the court finds that *Tenet Healthcare* does not control this case. First, *Tenet Healthcare* involved demurrer procedure, not summary judgment procedure. In California, the procedure for a demurrer resembles the procedure in Guam for a GRCP 12(b)(6) motion to dismiss,

*i.e.*, in assessing the demurrer, the court assumes all the facts alleged in the complaint to be true. *Compare id.* at 1097 *with First Hawaiian Bank v. Manley*, 2007 Guam 2 ¶ 9. In reviewing the demurrer, the *Tenet Healthcare* court therefore assumed several key allegations from the complaint to be true: that "several . . . managing agents and supervisors" were aware of the defendant's misconduct, that these individuals all "refused to take any action," and that they "hid this information so [defendant] could continue to work for [the corporation]." *Tenet Healthcare*, 169 Cal. App. 4th at 1112. The court concluded that such allegations—assumed to be true—would be sufficient to *state a claim for relief* with respect to a ratification theory. *Id.* That case did not decide that such allegations, without supportive evidence, would withstand a motion for summary judgment.

Here, such supportive evidence is lacking. It appears undisputed that George was not present for the altercation, and that he was not made aware of the altercation until this lawsuit was filed, more than five months later. If George did not know about the altercation and the alleged intentional torts committed therein, he could not reasonably be held to have participated in the ratification. *See Volandri v. Hlobil*, 170 Cal. App. 2d 656, 659 (Ct. App. 1959) ("[o]rdinarily, the law requires that a principal be apprised of all the facts surrounding a transaction before he will be held to have ratified the unauthorized acts of an agent."). Additionally, although Plaintiffs claim that George could have simply "called and noticed a meeting" to remove Benny and Josephine from their roles, the record does not establish that George had the unilateral power to undertake such action. The record does not appear to contain the articles of incorporation, by-laws, or any similar corporate documents, for either of the Corporate Defendants. It is therefore unclear to the court from where any purported power of George to call such a meeting would be vested, nor whether a simple majority vote (as suggested by Plaintiffs) would be sufficient to divest the other siblings from their managerial roles. And the court is aware of no further case law supporting the Plaintiffs' premise that a failure to call such a meeting is *de facto* proof of a corporate ratification. It is also true that as equal shareholders, directors and managers in the corporations as alleged in paragraphs 10, and 11 of the V. Complaint, plaintiffs could have asked for a meeting and removal of Benny from his managerial role.

The court therefore finds no evidence to support the Plaintiffs' premises that the Corporate Defendants either "authorized" or "ratified" the alleged tortious conduct of Benny and/or Josephine. And where there is no "significant probative evidence" suggesting a corporate

ratification occurred, summary judgment is appropriate. The court holds that the Corporate Defendants are shielded here from punitive damages as *respondeat superior* under 18 GCA § 20310 and *Fajardo*, 2000 Guam 4 ¶ 10, meaning summary judgment in favor of the defendants on all *respondeat superior* is appropriate.

### 3. Summary Judgment is Appropriate on All IIED Claims

Defendants next ask the court to grant summary judgment in favor of all defendants on Counts 4-7, 13-16, and 24-27 of the Verified Complaint, each of which allege the tort of Intentional Infliction of Emotional Distress (IIED). Defendants argue the actions of Benny and Josephine do not rise to the level of "extreme and outrageous conduct" necessary for an IIED claim. *See* Mot. Summ. Judgment at 6-7 (Jan. 27, 2023). The court has already granted summary judgment on Counts 13-16 and 24-27 above via its ruling on *respondeat superior*. Therefore, this section will address only Counts 4-7, each of which allege that Benny and Josephine are liable for IIED against each of Carline and Bella. The court agrees with the Defendants that summary judgment is appropriate on these counts.

In Guam, IIED requires proof of "(1) extreme and outrageous conduct by the defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional distress, on the plaintiffs part; and (4) actual and proximate causation of that emotional distress." *Moylan v. Citizens Sec. Bank*, 2015 Guam 35 ¶ 78 (quoting *Cruz Reyes v. United States*, Civ. No. 08-00005, slip op. at *5 (D. Guam, Dec. 15,2010)). The court holds that the plaintiffs cannot prevail on the first prong of the test: the conduct alleged is simply not "extreme and outrageous" enough for IIED.

The Verified Complaint and Plaintiffs' Declaration set forth the following allegations supporting the IIED claim: (1) Josephine scratched Carline's back in the shape of a cross; (2) Josephine shouted at and cursed Carline, her children, and her grandchildren; (3) Benny came within a foot of the Plaintiffs and used profanity against them; and (4) Benny impliedly threatened the Plaintiffs. Decl. Plaintiffs at 6 (Feb. 23, 2023). Corroborating evidence in the record for each of these allegations is minimal, but even assuming all allegations to be true, the conduct still does not reach the threshold of "extreme and outrageous conduct."

Across the United States, the threshold for "extreme and outrageous conduct" is very high. In California, conduct is properly deemed "outrageous" when it is "so extreme as to exceed all

bounds of that usually tolerated in a civilized community." *Chang v. Lederman*, 172 Cal. App. 4th 67, 86 (Ct. App. 2009). By contrast, "[l]iability for IIED does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Crouch v. Trinity Christian Center of Santa Ana, Inc.*, 39 Cal. App. 5th 995, 1007 (Ct. App. 2019) (quoting *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009)). Other jurisdictions are in accord. *See, e.g., Harris v Kreutzer*, 624 S.E. 2d 24, 33 (Va. 2006) ("[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community); *Schneider v. TRW, Inc.*, 938 F.2d 986, 992-93 (9th Cir. 1991) (granting summary judgment against IIED claims where an employer screamed at the plaintiff criticizing her performance, threatened to throw her out of the department, and used threatening gestures). In short, across the United States, courts apply a very high standard for "outrageousness" in order to "limit[] frivolous suits and avoid[] litigation in situations where only bad manners and mere hurt feelings are involved." *Harris*, 624 S.E. 2d at 33.

The alleged conduct of Benny and Josephine, although unbecoming, does not meet the standard; accordingly, as a matter of law, it is not "extreme and outrageous" enough to sustain the IIED claims. Mere acts of physical violence, such as Josephine's alleged act of scratching Carline's back, do not necessarily sustain an IIED claim. *See, e.g., King v. Burris*, 588 F. Supp. 1152, 1157 (D. Colo. 1984) (act of assaulting the plaintiff, "however unsavory even in sporting circles," was not sufficient to support an IIED claim); *Wiehe v. Kukal*, 592 P.2d 860, 863 (Kan. 1979) (physical assault and verbal threats stemming from a property line dispute not sufficient); *Diaz v. Ramsden*, 67 V.I. 81, 90 (V.I. 2016) ("This Court is hard pressed to accept that an alleged battery, without more, rises to the level of extreme and outrageous conduct."). Similarly, the use of profane or threatening language does not necessarily support an IIED claim. *See, e.g., Cochran v. Cochran*, 65 Cal. App. 4th 488, 498 ("There is no indication that respondent ever took any steps to either carry out his alleged threat or, at the least, make the threat appear more real. Without more, the [] message which respondent allegedly left is little more than the release of steam from the pressure cooker of the parties' ill will."); *Kilchermann v. Thompson*, 2015 WL 1814156 * 8 (Mich. Ct. App. 2015) (while a verbal threat may be "uncouth," it doesn't rise to the level of extreme and outrageous conduct); *Wiehe*, 592 P.2d at 863.

As stated in *Steffey v Ameris Bank*, 883 SE 2d 918 (2023),

In determining whether the conduct complained of was sufficiently extreme and outrageous [to support such a claim, the rule of thumb] is whether the recitation of the facts to an average member of the community would arouse her resentment against the defendant so that she would exclaim "Outrageous!" It must be so serious as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress. It does not include mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living, but must go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community. Whether reasonable persons could find the conduct reaches this level is a question of law for the court. The conduct alleged by [Steffey] in [her] complaint, as a matter of law, does not rise to this level. *Bazemore v. U. S. Bank Nat. Assn.*, 363 Ga. App. 723, 732-733 (f), 872 S.E.2d 491 (2022) (citation and punctuation omitted).

*Id. Steffey* 922.

While the alleged conduct of Benny and Josephine may be unsavory, and may even be tortious under other theories, it is not sufficient "extreme or outrageous conduct" to sustain IIED under Counts Four through Seven of the Verified Complaint. The court therefore grants summary judgment in favor of Benny and Josephine on these claims.

### 4. Summary Judgment is Granted to George Bello

Finally, George argues he has no liability on either Counts 36 or 37 of the Verified Complaint. The Complaint alleges that George was a stockholder, Director or Vice President of Bello Enterprises, or was a member, Manager, holder of an economic interest or the Chief Operating Officer of Bello L.L.C. Complaint ¶ 14. Benny was present on April 26, 2019 to serve a document pertaining to the Bello Family Trust to Carline and Bella. Complaint at ¶ 28.

There is no evidence that Benny and Josephine were on the premises to disrupt the Plaintiffs inspection of records on the direction of or in conspiracy with George. There is no evidence as alleged in paragraph 104 of the complaint that George has actual custody or control of all the books and records of Bello Enterprises and in fact the records were being inspected by the Plaintiffs at the place of business in the video. There is also no evidence that George is the employer of Benny and Josephine.

At oral argument, the attorney for Carline and Bella admitted that they had never discussed the incident with George prior to the filing of the lawsuit. George is an equal stockholder with the other siblings. Plaintiffs could have requested a meeting to discuss the actions of Benny and Josephine. Instead, they assumed it was futile without discussing it with their brother George to

see what his position on the matter was. Complaint at Paragraphs ¶¶ 105 and 106. The allegations in paragraph 109 of the Complaint that George was in a conspiracy with Benny and Josephine are not supported by any evidence in the record. The remedies requested in the Complaint are to set aside the election that took place on October 15, 2018 and for compensatory and punitive damages against the Corporate Defendants. There is no request for a remedy against George. All the remedies in the prayer for relief, if granted, are against Benny, Josephine and the Corporate Defendants.

Plaintiffs argue that George failed to take action to remove Benny and Josephine for their alleged bad acts "even after this case was filed." Opposition at 11 (Feb. 23, 2023). There is no evidence in the record that George on his own has the authority to remove Benny and Josephine from their positions in the Corporate Defendants. There is also nothing in the record that would support the claims of the Plaintiffs that George would side with the individual defendants in a vote of the stockholders especially since Plaintiffs never discussed the matter with him. It is unclear why George was joined as a party to this case since he cannot on his own afford any of the relief prayed for in the Complaint. Since there is no remedy requested from George and no evidence, he was involved in a conspiracy with the individual defendants Summary Judgment is granted in his favor.

Under California law, it is true that the theory of ratification can be applied where and employer fails to investigate or respond to charges that an employee committed an intentional tort, such as an assault or battery. *C.R.V. Tenet Healthcare*, 87 Cal. App. 4th 1094, 1110 (Ca. App. 2009). Thus, "ratification may occur when and employer learns of misconduct and fails to discharge an agent or employee." *Id.* at 111. "[A] principals' failure to discharge an agent after learning of his wrongful acts may be evidence of ratification". *Dickinson*, 37, Cal App 5th at 1158. While Plaintiffs complaint may have been sufficient to defeat a motion to dismiss, it is not enough to defeat Summary Judgment. Plaintiffs have failed to present any evidence that George participated in a conspiracy to prevent them from inspecting books and records. In contrast to the cases cited above Plaintiffs never informed George of the incident. The law requires that a principal be apprised of the facts surrounding a transaction before he can be held to have ratified the unauthorized acts of an agent. *Volandri v. Hlobil* 170 Cal. App. 2d 656, 659(Ca. App 1959).

The Plaintiffs did not inform George of the incident prior to the filing of the suit so there is no evidence that he even knew about it. He could not have ratified the actions prior to the suit as alleged in the complaint.

The ratification issue is further complicated by the relationship of the individual and corporate Defendants—Benny Josephine, George Bella and Carline are not just shareholders, "directors, managers, or officers" of the family companies, they are siblings with an acrimonious relationship. Not every argument between the siblings should be imputed to the corporations. Reviewing all the declarations, it is clear that the siblings have had other altercations in the past not related to the Corporate Defendants.

The Plaintiffs assert that "George simply could have promptly called and noticed meetings . . . to vote, with Carline and Bella, on removing Benny and Josephine . . . ." from their roles in the Defendant corporations. There is nothing in the record to show that was possible. As stockholders, Carline and Bella could, just as equally, called a meeting but they did not, claiming it was futile even though they never notified George of the incident prior to filing suit. The Articles of Incorporation were not presented as evidence for such a procedure nor do the Plaintiffs cite any other document or statute providing for that procedure. There is nothing to show that, on his own, George was in a position to remove Benny and Josephine from their positions as corporate stockholders, directors or employees. Therefore, the court grants the Motion for Summary Judgment on behalf of Defendant George Bello.

## 5. The Complaint is Adequately Verified

In their Motion, Benny and George also assert that the Plaintiffs' Complaint was not properly verified for two reasons: first, for a failure to comply with the statutory language regarding verification in 6 GCA § 4308, and second, because the Complaint was verified only by Bella and not by Carline. Mot. Summ. Judgment at 4-5 (Jan. 27, 2023). Beginning with the first contention, 6 GCA § 4308 provides, in relevant part:

> Whenever, under any law of Guam or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established or proved by the unsworn declaration,

certificate, verification or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

. . .

(2) If executed within Guam, or within a state having a rule of law or procedure similar in effect to this Section: "**I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct. . . .**"

6 GCA § 4308 (emphasis added). Here, the verification of the Complaint states:

I, Bella Bello Martinez, state that I am a Plaintiff in the above-entitled action, I have read the foregoing claims of the Defendant, Bello Enterprises, or the Defendant, Bello Family L.L.C., and know the contents thereof, **and the same is true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe those matters to be true. I verify under penalty of perjury that the foregoing is true and correct.**

V. Compl. at 32 (Oct. 3, 2019) (emphasis added). Defendants appear to argue that because Bella's verification uses the language "true to my own knowledge," and "as to matters therein alleged to be stated on information and believe . . . I believe those matters to be true," as opposed to the less equivocal "the foregoing is true and correct" language of 6 GCA § 4308, the Complaint is not properly verified.

While there appears to be no Guam law directly on point, in California — from where much Guam civil procedure originally derived — "[a] person verifying a pleading need not swear to the truth or his or her belief in the truth of the matters stated therein but may, instead, assert the truth or his or her belief in the truth of those matters "under penalty of perjury." Cal. Civ. Proc. § 446(a). Bella's verification, then, would appear to comply with California procedural rules. This court assumes the Guam Supreme Court would affirm this principle as well, and accordingly finds no verification error on the basis of noncompliance with 6 GCA § 4308.[4]

Defendants also raise the issue that while Bella verified the Complaint, Carline did not. However, Defendants cite no statute or case law establishing this as problematic. The Court's own

---

[4] The court also notes that the Guam Supreme Court has indicated that 6 GCA § 4308 is more akin to "suggested guidelines" for verification rather than a strict and exclusive requirement. *See Castino v. G.C. Corp.*, 2010 Guam 3 ¶¶ 34-35; *Agana Beach Condominium Homeowners' Ass'n v. Mafnas*, 2013 Guam 9 ¶ 41. Accordingly, except where a statute specifically demands verification in accordance with 6 GCA § 4308, compliance with that statute is merely one way to satisfy a general verification requirement. *See id.* (holding that compliance with 6 GCA § 4308 is but "one proper way" for verification). From this backdrop, the court is unconvinced that a minor deviation from 6 GCA § 4308 should be deemed a fatal error.

research suggests that while the Guam Supreme Court has not weighed in on the issue, there is no general requirement across other jurisdictions that all plaintiffs verify a complaint. *See, e.g., Auerbach v. Feder*, 115 N.Y.S.2d 67, 68 (N.Y. 1952); *Education Development Center, Inc. v. Palm Beach County*, 751 So.2d 621, 623 (Fla. Ct. App. 1999); *Pounds v. Marler*, 50 S.W.2d 382, 384 (Tex. Civ. App. 1932). The court therefore holds that Carline's non-signature does not deprive the Complaint of verified status.

### 6. The Court Will Reduce the Size of the Jury From Twelve to Six

Defendants next ask the court to reduce the size of the jury impaneled to decide the remaining causes of action from twelve members, as requested by the Plaintiffs, to six. The court agrees to this request.

Under GRCP 48, in a civil jury trial, "[t]he court shall seat a jury of not fewer than six and not more than twelve members[.]". Guam R. Civ. P. 48. The rule offers no further guidance on how the precise number of jurors should be decided, but at minimum, there is no prohibition on a six-member civil jury. The U.S Supreme Court has held it unproblematic for six jurors to comprise a civil jury, concluding there is "no discernible difference" in the results reached by juries of six versus juries of twelve. *See Colgrove v. Battin*, 413 U.S. 149, 159-60 (1973). Therefore, it is within the discretion of the court to seat a jury of six members for the upcoming trial.

Plaintiffs cite cases and secondary sources suggesting there may be potential benefits to larger jury sizes. *See* Opposition at 15-19. While the court recognizes these potential benefits, the court also recognizes that these benefits must be weighed against their costs. To impanel a larger jury will require a larger expenditure of court and juror resources, a concern that is particularly acute in the immediate aftermath of Typhoon Mawar and recovery efforts. The court finds that the remaining issues for trial are relatively simple and that a jury of six can resolve these issues just as efficiently and fairly as a larger jury. Therefore, the court orders that the jury for the upcoming trial will be limited to six members, exclusive of alternate jurors.

### 7. The Court Will Not Award Attorney's Fees to George and Benny For This Motion

Finally, Defendants request attorney's fees under GRCP 37(a)(4) under the theory that the Plaintiffs' causes of action are frivolous and therefore sanctionable. Mot. at 14. In response,

Plaintiffs correctly note that GRCP 37(a)(4) applies to permit sanctions for violations of discovery obligations, not dispositive motions. Defendants' Motion for Partial Summary Judgment is not a discovery motion, and so GRCP 37(a)(4) does not govern this issue.

Outside the context of GRCP 37(a)(4), Guam follows the "American Rule," which requires parties to bear their own litigation expenses, including attorney's fees, unless such fees are: (1) authorized by statute, (2) authorized by contract, or (3) allowed in judicially established equitable circumstances." *E.g., Fleming v. Quigley*, 2003 Guam 4 ¶ 7. The former two circumstances clearly do not apply here and the court finds no "established equitable circumstances" to support a departure from the American Rule here. Such departures are "narrowly drawn," *In re Guardianship of Moylan*, 2018 Guam 8 ¶ 11, and "[a]ny abrogation of the rule on a wide-scale basis should be left to the legislature." *Fleming*, 2003 Guam 4 ¶ 13. As noted in *Fleming*:

> courts have recognized that "[t]he American Rule is based upon the philosophy that 'one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." . . . "Other factors supporting the rule against fee shifting include the difficulties of proof inherent in litigating the question of what constitutes reasonable attorney fees, and the possibility of a threat being posed to the principle of independent advocacy by having the earnings of the attorney flow from the pen of the judge before whom he argues."

2003 Guam 4 ¶ 8 (quoting *Young v. Redman*, 128 Cal. Rptr. 86, 91 (Ct. App. 1976)). Recognizing these policy considerations, the court elects to follow the American Rule and will not order the Plaintiffs to pay the attorneys' fees related to this motion.

## CONCLUSION

Based on the above analysis, the court **GRANTS** summary judgment in favor of the Defendants on Counts 4-7 (Intentional Infliction of Mental Distress) and Counts 10-31 (Respondeat Superior) request for punitive damages of the Verified Complaint. Counts 32-33 were resolved by a Stipulation and Order to allow plaintiffs to continue their inspection of records without interference thus rendering the issues raised by those counts moot. The case will proceed to trial on the following counts:

- Count 1 (Assault Upon Carline by Benny)
- Count 2 (Assault and Battery Upon Carline by Josephine)

- Count 3 (Assault Upon Bella by Benny)
- Count 8 (Negligent Infliction of Emotional Distress Upon Carline by Benny)
- Count 9 (Negligent Infliction of Emotional Distress Upon Bella by Benny)
- Count 34(Invalid Election of Directors)

**SO ORDERED** this 29Th day of June, 2023.

**HONORABLE MARIA G. FITZPATRICK**
**Judge *Pro Tempore*, Superior Court of Guam**

**SERVICE VIA E-MAIL.**
I acknowledge that an electronic
copy of the original was e-mailed to:

Date:_____Time: 6/29/23

**Joseph Bamba, Jr.**
Deputy Clerk, Superior Court of Guam